# CIVIL

# COMPLAINT


SEAN DEANTÉ BRADSHAW


VERSUS


LESLIE COOLEY-DISMUKES, SECRETARY OF
NORTH CAROLINA DEPARTMENT OF ADULT
CORRECTIONS (NC DAC), WARDEN OF PEIDMONT
CORRECTIONAL INSTITUTION (P.C.I), SERGEANT
BATISTA OF PEIDMONT CORRECTIONAL
INSTITUTION (P.C.I), et al

# TABLE OF CONTENTS

Plaintiff, Defendant's, and Jurisdiction...................Page 1

Complaint.....................................Page 3

Legal Claims.................................Page 8

N.C. D.A.C. Prison Policy.....................Page 8

Legal Argument..............................Page 10

Conclusion...................................Page 12

Prayer For Relief............................Page 13

Verification..................................Page 15

Motion For Appointment of Counsel..........Page 16

Appendix....................................Page i

THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

SEAN DEANTE BRADSHAW

VERSUS

                                    CIVIL COMPLAINT

LESLIE COOLEY-DISMUKES, SECRETARY      NO.
OF NC DAC, WARDEN OF PEIDMONT
CORRECTIONAL INSTITUTION, SERGEANT
BATISTA OF PEIDMONT CORRECTIONAL
INSTITUTION, et al

NOW COMES PLAINTIFF, SEAN DEANTE BRADSHAW, to bring forth
this COMPLAINT against Leslie Cooley-Dismukes, secretary of
NC DAC (North Carolina Department of Adult Corrections), in her
official Capacity, Warden of Peidmont correctional
institution, in the official Capicity, and Sergeant
Batista of Peidmont Correctional Institution, in his
Individual Capacity, and his official Capicity. All others
are being sued in the official AND individual Capicity.

1. This is a civil action authorized by 42 U.S.C. 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the united states. The court has jurisdiction under 28 U.S.C. 1331 and 1343 (a) (3)

2. At all times in this complaint, plaintiff, SEAN DEANTE BRADSHAW, is, and was, a prisoner in the state of North Carolina

3. Defendant Leslie Cooley-Dismukes, at ALL TIMES mentioned herein, is, and was, the secretary of NC DAC. She is legally responsible for the overall operation of NC DAC, and each institution under its jurisdiction, including P.C.I.

4. Defendant, WARDEN of P.C.I. is, and was, legally responsible for the operation of P.C.I. and for the welfare of all the inmates in that prison.

5. Defendant, SERGEANT Batista, at all times mentioned herein, held the position of SERGEANT, and was a correctional officer at Peidmont Correctional Institution,

6. At all times mentioned in this COMPLAINT, Plaintiff was assigned to the J208 building, dorm A-4, bunk #11, unless otherwise mentioned, at P.L.I.

7.   COMPLAINT

ON AUGUST 27, 2025, THE DAY OF THE INCIDENT, I, SEAN DEANTE BRADSHAW, PLAINTIFF, WAS IN A-4 DORM BATHROOM SHORTLY BEFORE DINNER WAS SERVED. ALONG WITH ME AT THIS TIME WERE BRYAN PRICE (BUNK A-4 #6), MICHAEL SPOUGH (BUNK A-4 #9), JAY (REAL NAME UNKNOWN - BUNK A-4 #17), AN INDIVIDUAL WHO SLEPT ON A4 #33, WHO'S NAME IS NOT KNOWN AT THIS TIME, AND OTHER'S NOT KNOWN AT THIS TIME. MICHAEL SPOUGH, JAY, AND I WERE SITTING ON THE BENCH TALKING WHEN MICHAEL SPOUGH GOT UP TO LEAVE OUT THE BATHROOM. SHORTLY AFTER, JAY GETS UP AND WALKS TOWARD THE EXIT OF THE BATHROOM, AND THAT'S WHEN I SEE SERGEANT BATISTA AND FLOOR OFFICER MOULTRE ENTER THE BATHROOM. CONFUSED AS TO WHY THE OFFICER'S ARE IN THE BATHROOM, I STAND UP. BATISTA IS IN THE FRONT, WITH MOULTRE WALKING BEHIND HIM. AS SOON AS I GET TO MY FEET, WITHOUT PROVOCATION, BATISTA PULLS HIS TASER AND POINTS THE LIGHT IN MY FACE.

NOT UNDERSTANDING THE CAUSE FOR HIM PULLING
HIS WEAPON ON ME, I ASK BATISTA WHY HE PULLED
HIS TASER OUT. "CAUSE I CAN", BATISTA
RESPONDED TO ME AGGRESSIVELY. AT THIS TIME
MY HANDS ARE EMPTY NOR AM I MAKING ANY
THREATENING GESTURES OR DOING ANYTHING ILLEGAL.
MOULTRE THEN SAYS, "JUST ~~CHILL~~ CHILL". NOT
KNOWING IF HE'S TALKING TO ME OR BATISTA, I
SAY "BRA, I'M NOT DOING SHIT. I'M JUST STANDING
HERE", BATISTA THEN TELLS ME TO "SHUT UP."
I THEN TELL BATISTA TO "SHOOT ME, BECAUSE
I'M DOING NOTHING WRONG." BATISTA GIVES ME AN
ORDER TO PUT HANDCUFFS ON. MOULTRE NEVER PULLED
HIS HANDCUFFS OUT SO I ATTEMPTED TO TURN
AROUND TO PUT MY HANDS BEHIND MY BACK. AS SOON AS
I WENT TO TURN, BATISTA, UNPROVOKED, SHOOTS AND
ELETROCUTES ME IN THE LEFT CHEST AND LEFT SIDE.
AFTER I FALL TO THE GROUND, BATISTA CONTINUED TO
ELETROCUTE ME FOR ABOUT FIVE SECONDS. WHILE ON
THE GROUND, I WAS DISORIENTED AND IN VERY INTENSE
PAIN. IMMEDIATELY AFTER HE STOPPED ELETROCUTING ME,
BATISTA CALLED A FALSE "CODE FOUR" ON HIS WALKIE- TALKIE.
(A "CODE FOUR" IS A FIGHT IN PROGRESS BETWEEN INMATES).
SOON AFTER HE CALLS THE FALSE "CODE FOUR", BATISTA ELETROCUTES
ME TWO MORE TIMES WHILE TELLING ME TO PUT HANDCUFFS

ON. (NOBODY WAS FIGHTING IN THE BATHROOM. I WAS IN THE CORNER BY MYSELF AND I'VE NOT RECEIVED ONE DISCIPLINARY INFRACTION SAYING I WAS FIGHTING OR VIOLATING ANY NC DAC Policy.) I WAS IN WATER WHEN THIS HAPPENED BECAUSE BRYAN PRICE WAS CLEANING THE SHOWERS AT THIS TIME. (ALSO, I WAS THE ONLY BLACK INMATE IN THE BATHROOM AT THIS TIME). AFTER I WAS HELPED TO MY FEET, AND IN HANDCUFFS, I MOMENTARILY PASSED OUT AFTER SEEING BLOOD ON MY SHIRT. I WAS HELPED TO MY FEET A SECOND TIME AND THEN ESCORTED TO THE NURSE'S STATION. ON THE WAY TO THE NURSE'S STATION, BATISTA SLAMMED MY HEAD INTO THE WALL WHILE HE MADE THESE COMMENTS: "YEA, THAT'S WHY I MADE YOU BLEED", AND "OH, YOU FUCKED NOW". BATISTA CONTINUED TO ROUGH ME UP, EVEN AFTER HE RECIVED A PUBLIC REPREMAND FROM FLOOR OFFICER SINGLETON. WHEN WE GOT TO THE NURSE'S STATION I NOTICED THERE WERE A NUMBER OF OFFICER'S RESPONDING TO BATISTA'S FALSE "CODE FOUR", WHO WERE ASKING WHO WAS FIGHTING, INCLUDING FLOOR OFFICER LOWERY. WHILE THE NURSE WAS ATTENDING TO MY INJURIES, FLOOR OFFICER SINGLETON ASKED ME IF I WAS FIGHTING OR SCUFFLING WITH ANYONE IN THE BATHROOM. BEFORE I COULD RESPOND, MOULTRE ANSWERED, "NAH, THEY WAS JUST CHILLING". AFTER THE NURSE FINISHED I WAS ESCORTED BY

SINGLETON, AND SERGEANT AUTHOR, TO ANOTHER PART OF THE PRISON CALLED THE "HIGH RISE". ONCE IN THE "HIGH RISE" I WAITED FOR CAPTAIN HARRIS TO TAKE PICTURES OF MY INJURIES. AFTER HARRIS TOOK PICTURES, I WAS THEN ESCORTED TO THE SIXTH FLOOR OF THE "HIGH RISE", TO SOLITARY CONFINEMENT, TO HEAL. I FILLED OUT A GREIVANCE THE SAME DAY, SUMMARIZING THE ATTACK. THAT NIGHT, I HAD NIGHTMARES ABOUT THE INCIDENT. AFTER I WAS RELEASED FROM SOLITARY CONFINEMENT, FOUR DAYS LATER, I TOLD THE PSYCHOLOGIST/ THERAPIST ABOUT MY PROBLEMS. I CONTINUE TO HAVE NIGHTMARES ABOUT THIS SITUATION, AND I CONTINUE TO SEEK THERAPY, THE RESPONSES TO MY GREIVANCE SOUGHT TO COVER UP BATISTA'S ASSAULT ON ME BY BLAMMING ME. THE WARDEN, AND PCI STAFF ARE RESONSIBLE FOR THE COVER-UP, WHEN IN FACT I NEVER RECIEVED NOT ONE INFRACTION INVOLVING THIS INCIDENT. SERGEANT BATISTA'S USE OF HIS TASER CAUSED ME EXTREME PAIN, EMBARRESSMENT, AND PSYCHOLOGICAL INJURY. THE EXTRA TWO ELECTROCUTIONS WERE UNNECESSARY, AS I WAS DOWN, ON MY BACK, AND NOT PUTTING UP ANY RESISTANCE. BATISTA PULLED HIS TASER UNPROVOKED, EVEN BEFORE GIVING ME ANY ORDER. BATISTA TRIED TO COVER HIS ACTIONS BY CALLING A FALSE CODE

FOUR, SAYING I WAS FIGHTING ANOTHER INMATE.
BATISTA KNEW HIS ACTIONS WERE UNCALLED FOR
BUT HE WANTED TO CAUSE ME HARM BECAUSE
HE BRAGGED ABOUT MAKING ME BLEED AND
CONTINUED TO ATTACK ME WHILE I WAS IN
HANDCUFFS, EVEN AFTER SINGLETON TRIED TO
STOP HIM. BATISTA'S ACTIONS WERE PREMEDITATED
AND DELIBERATELY CARRIED OUT. THIS UNPROVOKED
ATTACK, AND THE ATTEMPTED COVER-UP BY PCI
ADMINISTRATION AND THE WARDEN OF PCI, HAS
HAD A LASTING PSYCHOLOGICAL EFFECT ON MY
LIFE.

(AS OF THE DATE OF THIS, COMPLAINT,
PLAINTIFF HAS NOT BEEN CHARGED WITH VIOLATING
ANY PRISON POLICY REGARDING THE INCIDENT DESCRIBED
HEREIN)

8.    LEGAL CLAIMS

As a Citizen of North Carolina, and the
United States, Plaintiff has a Right to be Free
From "Cruel and Unusual Punishment". (N.C. Const.
Art. 1 §27, U.S. Const. 8th amend.), even as
one "Convicted of Crimes." (INGRAHAM V WRIGHT
97 S.Ct.1409 at 1420 (1977)

In drawing, and using, his taser, Sergeant
Batista violated Clearly Established NC DAC
Prison Policy, And Clearly Established Constitutional
Right of Plaintiff. Qualified Immunity does
not Protect Officer's who Violate "Clearly
established Statutory or Constitutional rights
of which a reasonable Person would have know".
(HARLOW V. FITZGERALD 457 U.S. 800 at 818, 102
S.ct. 2738 (1982). Plaintiff argues that a
reasonable Person would have Known NOT to
electrocute someone For no reason Proscribed
by Law.


(A).    NC DAC PRISON POLICY
1) "Officer's shall not display a C.E.W. (Conducted
electrical Weapon) when force is not otherwise
authorized." (NC DAC Policy & Procedure Ch. F sec.1500-
Use of force §IV. Procedures (3)(c) Pg.6 of 19)

2). "Officer's will give verbal warnings, when feasible, to warn the target, and all surrounding persons, of the impending C.E.W deployment". (NC DAC Policy & Procedures Ch.F Sec. 1500 - Use of Force §IV: Procedures (3)(F) Pg. 6 of 19)

3). "Deadly force may not be used soley to protect property or ensure compliance with a lawful order that does not implicate personal safety." (NC DAC Policy & Procedures Ch.F Sec.1500 - Use of Force §III: Policy (c)(4) Pg. 4 of 19)

4). "An officer is prohibited from using force solely as a result of verbal provocation. An officer shall not use force against an offender who has abandoned their resistance or who is effectively restrained. The use of force as punishment is strictly prohibited (5-AC1-30-08)". (NC DAC Policy & Procedure Ch. F Sec. 1500 - Use of Force §III: Policy (D) Pg. 4 of 19)

5). NC DAC POLICY & PROCEDURE VIOLATION ARGUEMENT

In "displaying" his taser, Batista escalated an otherwise routine situation into a far more dangerous one. Force was not authorized against plaintiff, who was standing causually with his hands by his side. Batista failed to give verbal warning of his intent to tase plaintiff, even though he had ample to do so, but instead decided to engage in a back and forth with plaintiff in a unprofessional way.

Batista violated clearly established Policy when he electrocuted Plaintiff, who was virtually standing in a corner by himself, the First time. The second and third times were clearly uncalled for when Plaintiff was on his back, in excruciating pain and disoriented, From the First time. The DAC Policy is very clear on the use of Force, and, Plaintiff argues, Batista violated that Policy.

## (B) LEGAL ARGUEMENT

"To Prove a claim that Prison official's violated 8th amendment, through excessive Force, inmates must satisfy 2 requirements: he must satisfy the subjective requirement that Force used by C.O.'s inflicted unnecessary and wanton pain and suffering, and then he must show that officers' actions, taken contextually, were objectively harmful enough to offend contemporary standards of decency". (STANLEY V. HEJIRIKA 134 F.3d 629 at 634 (4th Cir. 1998) It is Plaintiff's assertion that sergeant Batista violated clearly established law to be free from cruel and unusual Punishment when he electrocuted Plaintiff three times and then slammed Plaintiff's head into the plexi-glass while Plaintiff was Fully restrained and compliant. Plaintiff argues that the Force used upon him is more than enough to "offend contemporary standards of decency"

"The objective component measures the nature of the force, asking whether that force was sufficiently serious to establish a cause of action. This is not a high bat; de minimis or trivial force is not enough, but anything more will suffice"; (BROOKS v JOHNSON 924 F.3d 104 (4th Cir. 2019) Plaintiff argues, and the record will show, that the force used against him was more than "de minimis", or "trivial".

"the subjective componet.... asks whether the officer's acted with a sufficiently culpable state of mind," (JOHNSON 924 F.3d at 112 (4th Cir. 2019) To address the subjective componant, Plaintiff turns to the WHITLEY FACTORS discussed in (DEAN V. JONES 984 F.3d 295 (4th Cir. 2021) (citing WHITLEY V ALBERS, 475 U.S. 321, 106 S.Ct. 1078, 89 L.Ed. 2d 251 (1986) The WHITLEY FACTORS ARE: (1) the need for the application of force, (2) the relationship between the need and the ammount of force that was used, (3) the extent of any reasonably percieved threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." (JONES, 984 F.3d at 302) Plaintiff's argument addressing the WHITLEY FACTORS are simplified into one paragraph: (1) there was no "need" to apply deadly force (see PARKER V. BLADEN COUNTY 583 F. supp. 2d 736 (E.D. NC 2008) - A Man was killed by a taser electrocution). (2) Since there was no "need", there was no "relationship"; (3) Plaintiff, standing in a corner by himself, empty-handed and non-threatening, Presented no "threat", (4) Batista Made no effort

Case 3:25-cv-00955-MR Document 1-1 Filed 12/01/25 Page 13 of 17

to "temper the severity of a forceful response".

## 9.     CONCLUSION

Sergeant Batista's actions before, and after, force was used, shows a culpable mindstate. Namely, displaying and using taser unnecessarily; calling a false code four and then tasing Plaintiff twice more while he was down, unresisting, and disoriented. bragging about the results of the excessive force ("Yea, that's why I made you bleed."), and continuing to assault Plaintiff, to the point where he recieved a public reprimand by floor officer Singleton, while Plaintiff was compliant and in handcuffs. But the most chilling of Batista's actions was what he said, when looking at this incident as a whole, before force was even used. When asked by Plaintiff why he pulled his taser, Batista's response wasn't that Plaintiff violated NS DOC policy or disobeyed a direct order. No. Instead, Batista's response was "Cause I Can". Considering what happened next, that statement, "Cause I Can", shows that Batista was willing to, and did, maliciously risk harm under the color of state law while being utterly indifferent to the consequences and the right of the Plaintiff to be free from Cruel and unusual

In lest than 30 seconds, for no reason other than to cause harm, sadistically. Batista's actions held no legitiment governmental interest, and, plaintiff argues, thoes actions violated clearly established NC DAC Prison Policy, and Rights garrunteed by the UNITED STATES CONSTITUTION.

10.    PRAYER FOR RELIEF

In compliance with the Prisoner Litigation Reform Act (P.L.R.A), Plaintiff has exhausted ALL administrative remedies within the NC Prison system, to no avail. As the U.S. supreme Court has held: "A Prison's administrative procedure is unavailible for purposes of the P.L.R.A. exhaustion requirement when, despite what regulations or guidance may promise, it operates as a simple dead-end with officers unable or consistently unwilling to provide any releif to aggreived inmates". (ROSS V. BLAKE 136 S.ct. 1850 (2016)

Plaintiff now PRAYS THIS COURT for the following RELIEF:

(a) DECLARATORY RELIEF that the acts and omissions herein described VIOLATED Plaintiff's Rights under the U.S. Constitution;

(b) PRELIMINARY AND PERMANENT INJUNCTION to Revise, Change, Erase, or Delete the Disciplinary offense that is an (A26) which states: "knowingly posess, consume, or inhale any vapor, fumes, or non-controlled or unknown substance that alters or could alter mental and or physical capacity, or presentation of behaviors to include but not limited to altered speech, incoherence, aggressive/violent actions etc, when thoes behaviors that are a direct result of an Offenders "use" (NC DAC Policy

Procedure Ch. B Sec. 0200 - Disciplinary Procedures B. Pg. 4 of 23)

(c) PRELIMINARY AND PERMANENT INJUNCTION ORDER officers at P.C.1. to follow the "USE OF FORCE" Policy and Procedures in the NC DAC Policy and Procedure handbook,

(d) COMPENSATORY DAMAGES in the ammount of seven hundred fifty thousand dollars ($750,000.00) for the violation of Plaintiff's RIGHT to be free from CRUEL AND UNUSUAL PUNISHMENT,

(e) PUNITIVE DAMAGES in the ammount of seven hundred fifty thousand dollars for the attempted cover-up BY the warden, Captain Harris, and P.C.I. administrative staff, involving this incident.

(F) A JURY TRIAL on all issues triable by a Jury.

(g) Any additional relief THIS COURT deems proper, Just, and equitable.

All Prayer for relief is against each defendant Jointly and severally.


Dated this the ____ day of _____ Month Year 2025


RESPECTFULLY SUBMITTED,


S-Q-B

SEAN DEANTÉ BRADSHAW

#1014789

## II.    VERIFICATION

I, SEAN DEANTÉ BRADSHAW, Plaintiff, have read the foregoing Complaint and hereby VERIFY that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certifY under the penalty of PerJury that the foregoing is true and Correct.


S. R. B

SEAN DEANTÉ BRADSHAW
# 1014789